WOOD *vs.* JACKSON, ex dem. GENET and others.

A plaintiff in ejectment is not *estopped* from a recovery, by a verdict and judgment in a suit against him and others, as *heirs* of a third person, in which a plea of *riens per descent* was interposed, and a verdict found generally that the defendants *had lands by descent,* when it appears that such judgment was subsequently *reversed,* and where the verdict of the jury was not necessarily limited to the premises claimed in the action of ejectment, but might have referred to other lands : although previous to the reversal of the judgment the land claimed in the action of ejectment was sold under such judgment, and at the time of the commencement of the action of ejectment was held by title derived from the purchaser.

Under such circumstances, it was held in this case, that the defendant in the action of ejectment, was not at liberty to prove that on the trial of the suit against the *heirs,* the question whether the premises now claimed were held by the now plaintiffs *as heirs,* was litigated and passed upon by the jury.

It seems that, if in the suit against the heirs, the jury had found that the *specific premises* claimed in the action of ejectment had come to the defendants in that suit by *descent,* the plaintiff in ejectment would not have been entitled to recover, and that the purchaser under the judgment against the heirs would have been protected in his possession, notwithstanding the reversal of the judgment.

ERROR from the supreme court. This was an action of ejectment brought for the recovery of a house and lot in the city of New York. In 8 *Wendell,* [108] (10 *et sequitur,*) will be found a *statement* of the case resulting in a verdict for the *plaintiff,* the *opinion* delivered in the supreme court denying a new trial, and the *opinions* delivered in this court *reversing* the judgment of the supreme court. A *venire de novo* was awarded, a new trial had, and the plaintiff again obtained a verdict. On this last trial the same facts appeared as on the trial reported above, except that in addition to the facts before proved, the plaintiff produced a *record of reversal* of the judgment of the *Manhattan Co. against Genet and others,* in which the jury found against the defendants on the plea of *riens per descent.* This judgment of reversal was rendered 6th April, 1824. The defendant tendered a bill of exceptions presenting the same questions as were presented by the bill of exceptions passed upon by this court in 8 *Wendell,* upon which bill he applied to the supreme court for a new trial, which was denied, and judgment rendered for the plaintiff. The defendant sued out a writ of error. The following opinion was delivered in the supreme court on refusing a new trial :

*By the Court,* SAVAGE, *Ch. J.* This case has been twice before this court, and once before the court for the correction of errors. The judgment of this court was reversed in the court for the correction of errors ; and it was intimated in the opinion of his honor the chancellor, that a *venire de novo* ought to be

awarded, for the purpose of embracing in the record the fact that the judgment in favor of the Manhattan Company against Osgood and others has been reversed. That fact appears in this bill of exceptions, and the case now contains the material facts which were contained in the case, as presented at first, (3 *Wendell*, 27,) and upon which the chancellor says the *decision* of this court was correct. Taking the opinion of the chancellor, (8 *Wendell*, 31 to 37,) as containing the opinion of the court for the correction of errors, it would not be respectful in this court to argue the matter over again. The bill of exceptions now contains all the facts considered necessary to entitle the plaintiff to judgment. The motion for a new trial must therefore be denied.

The cause was argued here by                                              [109]

*B. F. Butler,* (attorney-general of the United States,) for the plaintiff in error.

*S. Stevens & S. P. Staples,* for the defendant in error.

*Points insisted on for plaintiff in error :*

FIRST.  *As to the former recovery:*

I. The title of the lessors of the plaintiff, (Mr. and Mrs. Genet,) was tried and adjudged against them in the former action; and they were concluded from again setting it up, as against the same parties, or those claiming under them. 1. The former recovery was of the same force and effect, as matter of evidence under the general issue, as it would have been if pleaded: because, in the action of ejectment, all matters of defence may be given in evidence under that issue; and because the defendant below had no opportunity of pleading the former recovery.  According to the law of the action, he could only plead the general issue.  (*Wood* v. *Jackson,* 8 *Wendell,* 35, 40.)  2. If the issue joined in the former action did not necessarily involve the title of the lessors of the plaintiff, yet it was broad enough to embrace or include the title, so that it might properly come in question on the trial : and where the issue on the record is such that the title may properly come in question, it may be shown, by extrinsic evidence, that it did in fact come in question, and was passed upon on the trial.  Such evidence does not contradict, but is in accordance with the record; and without it, a former recovery can seldom be a bar to a second litigation of the same question.  (*Wood* v. *Jackson,* 8 *Wendell,* 37, 47.)  3. It appears by the record offered in this case, that the very point of the issue in the former suit, and the matter directly adjudicated, was, that Mrs. Genet and others held lands by descent and devise from Mrs. Osgood, and subject to the payment of her debts. That matter they were not at liberty again to litigate with the plaintiffs in the former judgment, or those claiming under them.  With that fact established, the title of the defendant below was perfect, with the single exception [110] that the record only proved that *some* lands came in question on the former trial, and concerning which it was adjudged, that Mrs. Genet and others held them by descent and devise, without specifying or showing what particular lot, piece or parcel of land came so in question—whether No. 11 Cherry street, or some other lands.  4. The acts of the parties, at the sheriff's sale sufficiently identified the premises.

II. The evidence offered in this case, to identify the particular lands which came in question on the former trial, and to which the record refers, No. 11 Cherry street, was improperly overruled by the circuit judge.  (*Wood* v. *Jackson,* 8 *Wendell,* 37, 47.)

III. The bill of exceptions in the record as it now stands, is precisely the same as when before this court in 1831, except that the plaintiff below, on the last trial of the cause, offered in evidence a record of the reversal, by the court for the correction of errors, on the 6th of April, 1824, of the judgment in favor of the Manhattan Company against Osgood and others; which record, though objected to by the counsel for the defendant, was received in evidence by the circuit judge.  Unless, therefore, the case is materially changed by the intro-

Wood v. Jackson.

duction .of this evidence, the judgment of the supreme court must again be reversed. (*Wood* v. *Jackson*, 8 *Wendell*, 9, 47.)

IV. The rights of the plaintiff in error, as a purchaser at the sheriff's sale under the judgment, were not affected by the reversal of that judgment after his purchase.  1. The lessors of the plaintiff, Mr. and Mrs. Genet, were estopped, by the recovery of the judgment, from again *setting up, as against the same parties, or those claiming under them, any title under the deed of Mrs. Osgood; this estoppel worked upon the land, and by the sheriff's sale, became a part of the title of the purchaser, which could not be destroyed or affected by the reversal. (*Wood* v. *Jackson*, 8 *Wendell*, 36, 46.   2 *Lilly's Ent.* 529, 504.   2 *Chitty's Pleadings.*   2 *Saunders' Rep.* 7, note 7.   1 *R. L.* 1813, *p.* 316, § 4.   *Roosevelt* v. *Heirs of Fulton*, 7 *Cowen*, 82.   *Comyn's Dig. Estoppel* (*D.*).   *Palmer* v. *Ekins*, [111] 2 *Strange*, 818.   *Sands* v. *Hildreth*, 14 *Johns. R.* 497, 498.   *Jackson* v. *Graham*, 3 *Caines*, 188.   *Weale* v. *Lower*, *Pollexfen*, 67.   *Trevivan* v. *Lawrence*, 1 *Salk.* 276.   2 *Lord Raym.* 1036, 1051.   6 *Mod.* 258. . *Jackson* v. *Carver*, 4 *Peters*, 1, 83, 87.   2. The judgment and execution being given by the court, the purchaser will be protected on grounds of public policy. 1 *Cowen*, 622, 642.   *Dyer's Rep.* 363, *a*, *No.* 24.   *Manning's case*, 8 *Coke*, 191, 3*d Res. in Paramour's case.*   *Drury's case*, 8 *Coke*, 284.   *Goodyere* v. *Ince*, *Cro. Jac.* 246.   *Yelverton*, 179.   *Jackson* v. *Bartlett*, 8 *Johns. R.* 361.   *Jackson* v. *Roosevelt*, 13 *id.* 101, 102.   *Woodcock* v. *Bennet*, 1 *Cowen*, 734.   *Benson* v. *Rice*, 2 *Nott & McCord*, 577.)

SECOND. *As to the deed of Mrs. Osgood:*

V. The evidence offered on the part of the defendant below, for the purpose of avoiding the conveyance from Mrs. Osgood to her daughter, Martha B. Osgood, ought to have been received, and the judge erred in requiring further proof of an actual intent to defraud on the part of Mrs. Osgood.   1. The facts offered to be proved, were at least presumptive evidence of fraud, and should have been received and submitted to the jury. (*Reade* v. *Livingston*, 3 *Johns. Ch. R.* 501. *Manhattan Co.* v. *Osgood*, 15 *Johns. R.* 162.   3 *Cowen*, 602.   *Sexton* v. *Sexton*, 8 *Wheat.* 242.   *Hinds' lessee* v. *Longworth*, 11 *id.* 212.   *Jackson* v. *Seward*, 5 *Cowen*, 67.   8 *id.* 406.   2 *R. S.* 137.   *Wood* v. *Jackson*, 8 *Wendell*, 25, 32.)   2. The facts offered to be proved, if not repelled, would have been conclusive against the deed.

VI. The marriage of Mr. Genet, under the circumstances of this case, could not set up and make valid a deed so impeached.   1. The deed being fraudulent as against the creditors of Mrs. Osgood, at the time of the gift, no subsequent act of the fraudulent grantee could validate the title in her hands, as against those creditors, whatever might be the case as to subsequent creditors or bona fide purchasers from the grantor.   2. It was a mere deed of gift; not made upon, or in contemplation of, or .with any reference to a marriage.   3. The considera-
[112] tion of "natural love and affection," stated in the deed, was of itself notice to Mr. Genet, that the deed was voluntary and fraudulent as against the creditors of Mrs. Osgood, and sufficient to put him on inquiry as to the fact whether or not there were any such creditors.   4. It does not appear that Mrs. Genet gained credit by the conveyance, or that Mr. Genet was induced to marry her on that account.   What was proved on this subject, was at the most only evidence tending to establish the fact, and proper to be submitted to the jury; but the judge took upon himself to decide the question.   *Wood* v. *Jackson*, 8 *Wendell*, 33, 34, *and cases there cited.*   *Sugden's Law of Vendors*, 564, 565. *Newland on Contracts*, 404.   *Whelan* v. *Whelan*, 3 *Cowen*, 579.

*Points on the part of the defendants in error.*

I. The parol evidence offered by the plaintiff in error, (defendant below,) tending to show that the validity of the deed from Maria Osgood to her daughter Martha, had been passed upon by a jury in another. cause, was properly rejected.' 1. Such evidence would not constitute the verdict and judgment in the former

Wood v. Jackson.

cause, an estoppel. *First,* That judgment had been reversed and the verdict set aside, and could not, therefore, under any circumstances, operate as an estoppel. There was, in fact, no such verdict or judgment in existence at the time of the trial of this cause. *Mahoney* v. *Ashton,* 4 *Har. & McHen.* 246. *Richardson* v *Parsons,* 1 *Har. & John.* 253. *Buller's N. P.* 234. 8 *Wendell,* 36. *Second,* It did not appear by the record of the judgment in the case of the *Manhattan Company* v. *Genet and others,* that the validity of the deed from Mrs. Osgood to Martha, came in question in that suit. Parol evidence of that fact was inadmissible *for the purpose of creating an estoppel;* because the party is *concluded or estopped only as to those facts* which appear *from the record* to have been *directly and necessarily* in issue. *Outram* v. *Morewood,* 3 *East.* 346. *Sintzenick* v. *Lucas,* 1 *Esp.* 43. *Manning* v. *Harris,* 2 *Johns. R.* 24. *Smith* v. *Sherwood,* 4 *Conn. R.* 276. *Church* v. *Leavenworth,* 4 *Day's R.* 274. *Ryer* v. *Atwater et al., id.* 431. *The King* v. *The Inhabitants of Knaptoft,* 4 *Dowl. & Ryl.* 469. 8 *Wendell,* 36. *Third,* The proof offered was not that the validity [113] of this deed was the *sole* question in that cause, but that that question was distinctly presented to the jury in that case. From the record in that case it appears that there were other facts which would have required the jury to give the same verdict, even if they had been of opinion that the deed now in question was valid; consequently, it follows that whether the jury found this deed void or not, is matter of inference. It also follows that the fact that this deed was void, was not absolutely necessary to the finding of the verdict in the previous suit. In neither of which cases is a party concluded or estopped by a verdict. (*Opinion of Ch. J. De Grey, in the case of the Duchess of Kingston,* 20 *St. Trials—by Howard*—538; 4 *Dowl. & Ryl.,* 469; 8 *Wendell,* 36; 4 *Day's R.,* 431.) After a verdict has been set aside, proof as to which way the jury found upon any particular fact litigated before the jury who rendered the verdict, is not legal or competent for any purpose.

II. The proof given by the plaintiff that the conveyance to Martha formed an inducement on the part of Mr. Genet to marry her, was clearly admissible and proper; because, although the conveyance to Martha was voluntary, yet if it formed *any* inducement to her subsequent marriage, that is sufficient to render the conveyance valid against the creditors of the grantor. (*Rodgers* v. *Langham,* 1 *Sidf,* 133. *Kirk* v. *Clark, Prec. in Ch.,* 375; *East India Company* v. *Clavell, Gill s Eq. R.,* 37; *Verplanck* v. *Sterry,* 12 *Johns. R.,* 536, S. C.; 1 *Johns. Ch. R.,* 251; 8 *Cowen,* 443; 1 *Atk.,* 15, 93; 11 *Wheat.,* 211.) The most that can be said against the admission of this evidence, is, that it was unnecessary; that the plaintiff, in giving it, was only making "assurance doubly sure," as the property is always presumed to form an inducement to the marriage. (*Brown* v. *Carter,* 5 *Ves.,* 879; 8 *Wendell,* 33.)

III. The evidence offered by the defendant (below,) of the indebtedness of Mrs. Osgood at the time of the conveyance by her to her daughter Martha, was properly rejected; the defendant below not pretending or insisting that there was any intention to defraud the creditors of Mrs. Osgood, nor any [114] fraud in fact in the transaction. The conveyance, therefore, by Mrs. Osgood to her daughter Martha, was not fraudulent, but merely voluntary, and was rendered valid by the subsequent marriage of Martha, *even as against the creditors of Mrs. Osgood;* proof, therefore, of the existence of *such creditors,* could have no legitimate effect upon the question of the validity of that conveyance.

IV. The receipt of the surplus purchase money by Mr. Genet, formed no bar to the recovery of the plaintiffs below; the circuit judge was therefore right in so instructing the jury. (8 *Wendell,* 31, 32.)

*By the* CHANCELLOR. When this cause was formerly before this court, I gave the reasons at large from which I then arrived at the conclusion, that a voluntary deed, not in fact intended to defraud creditors, became valid as against creditors

Wood *v.* Jackson.

and purchasers by a subsequent marriage, under circumstances from which the court might legally presume that the conveyance had formed a part of the inducements to such marriage. I then also stated the reasons which induced me to suppose that a reversal of a judgment which would have concluded a party as to a particular fact by way of estoppel, would have the effect to remove the estoppel which had previously existed, so as to leave such party at full liberty to show the real truth of the case. If I was right in those conclusions, the judgment in this case should be affirmed; as the technical estoppel, which appeared to exist at that time, is now removed by the production of the record of the reversal of the judgment, under which the plaintiff in error seeks to protect himself in the assertion of the fact that the deed to Mrs. Genet was fraudulent and void. I have carefully reviewed the grounds of my former decision, in the light of the new and very able arguments which we have heard upon the present writ of error, and can see no good reasons for changing the opinion which I then expressed on these points. But I wish it also to be distinctly understood, that I put my decision in this case upon the ground that the judgment under which the plaintiff in error claims, was not against the lands of the defendants generally, nor [115] against any specific lot which appeared from the record, either by way of estoppel or otherwise, to have come to them by descent or devise from Mrs. Osgood; as it no where appeared from that record that the particular lot now in question had been found by the verdict of the jury, or that it was even claimed, by the plaintiffs in that suit, to be a part of the real estate which had come to the defendants by devise or descent, so as to authorize the sheriff to sell it under the execution issued upon that judgment: in other words, I do not intend to express any opinion upon the question whether the purchaser under a judgment or decree, against a particular piece of property, in the nature of a proceeding *in rem*, will lose his title to the property by a subsequent reversal of the judgment or decree under the authority of which such sale was made. At present I can see no good reason why a *bona fide* purchaser should not be protected in such a case, to the same extent that the purchaser under a general judgment or decree against all of the defendant's property, would be protected in the case of a subsequent reversal. This case does not present that question for our decision, for the reasons before stated.

My vote in favor of the reversal of the judgment, when this case was here before, was certainly founded upon the supposition that it appeared from the bill of exceptions that the judgment, under which the plaintiff in error claimed was still in full force, so as to estop Mrs. Genet and her husband from alleging that this lot did not come to them by descent or devise from Mrs. Osgood; and also that the plaintiff in error had offered to prove that the *only question* in controversy on the trial between the Manhattan Company and the heirs and devisees of Mrs. Osgood, was as to the validity of the deed to Mrs. Genet; so that it would have been impossible for the jury in that case to have found that any lands came to the defendants by descent or devise, unless they had arrived at the conclusion that this particular conveyance was fraudulent and void. If such is not the fair construction of the terms of the defendant's offer, I certainly ought not to have voted for a reversal of the judgment in the former case; because I there [116] held, with Mr. Justice Marcy, that there never was an estoppel if there was any other evidence from which the jury might have found the issue in favor of the plaintiffs, although they might have been satisfied on that trial that this particular deed was not invalid. If the deed to the other daughter, who was then unmarried, was also in controversy before the jury, which deed was *prima facie* fraudulent as against prior creditors of the mother, that was sufficient to justify the verdict of the jury. Her deed being *prima facie* fraudulent, the title to that lot did not pass by the deed to Susan K. Some lands, to wit, that lot, had therefore come to all the defendants, either by descent, or by the general devise to them of all the real estate of Mrs. Osgood. And where the evidence in

Wood v. Jackson.

the case, when taken in connection with the recorded verdict of the jury, leaves it doubtful as to what was their decision upon a particular fact, you cannot go out of the record for the purpose of inquiring what their decision actually was as to that fact, and thus creating an estoppel by parol.

The plaintiff in error was not prevented, in this case, from showing that there was an actual intention to defraud the creditors of Mrs. Osgood by her giving this deed to Mrs. Genet; and by the subsequent marriage that deed was no longer a mere voluntary deed and without consideration, so as to make it *prima facie* fraudulent as against creditors. Wood was therefore bound to produce some evidence of actual fraud to entitle him to a verdict; and as he abandoned that ground, he has no reason to complain of the manner in which the case was disposed of by the judge at the circuit. As the production of the record of reversal of the judgment under which he claimed title, deprived him of the power to take advantage of a technical objection to the title of the lessors of the plaintiff, on the ground of estoppel, and the idea of establishing any actual fraud in the case being entirely abandoned, the decision of this court in the case of *Seward* v. *Jackson*, (8 *Cowen*, 406,) is conclusive to show that Wood had no legal defence to the suit.

For these reasons I think the judgment of the supreme court should be affirmed.

By Senator MAISON. The material facts in this case as now pre- [117] sented, are substantially the same as when the cause was before the supreme court in 1829, reported in 3 *Wendell*, 27. The supreme court, on that occasion, ordered a new trial, (the verdict having been found for the defendant,) on the ground that the circuit judge erred in deciding that it was competent for the defendant, Wood, to show by parol evidence, that the validity of the deed of Maria Osgood to her daughter Martha B. Osgood, under which the plaintiff claims title, was in question in the suit of the Manhattan Company against the heirs and devisees of Mrs. Osgood; and on the grounds, that the judge charged the jury that the evidence proved the deed to be fraudulent against creditors, and that the finding of the jury in the Manhattan cause was conclusive against the right of the plaintiffs in this suit, to the premises in question. The supreme court holding, in the spirit and letter of the cases of the Duchess of Kingston, (2 *St. Trials, collected by Howell and others*, 538. *Outram* v. *Morewood*, 3 *East*, 346. *Sintzewick* v. *Lucas*, 1 *Esp. R.* 43. *Smith* v. *Sherwood*, 4 *Conn. R.* 276. 4 *Day's R.* 274, 431,) that it must appear *from the record*, that the fact in issue in this suit, was in issue in the suit of the Manhattan Company, and directly decided therein, to be conclusive between the parties, and that no parol evidence could be admitted to prove that fact. A new trial was had, and upon this second trial, the circuit judge, in obedience to the decision of the supreme court, refused to permit the defendant to give evidence of the facts on which the verdict in favor of the Manhattan Company was found, and it hence became unnecessary to produce the record of this court reversing the Manhattan judgment, and consequently it was not offered or given in evidence. On this second trial, a verdict was found for the plaintiff. Application was made to the Supreme court for a new trial, which was denied; the reasons of the court, as given by Chief Justice Savage, will be found in 8 *Wendell*, 16. He maintaining the same doctrine put forth by Mr. Justice Marcy, on the former occasion, to wit, that the verdict and judgment in favor of the Manhattan Company, was not and could [118] not be deemed as conclusive, unless it had been pleaded by way of estoppel; and that where the party waives his plea of estoppel, and pleads only the general issue, the judgment is not conclusive, and the party is at liberty to controvert the fact anew, and the jury to find the truth. The learned chief justice passes in review many decisions having a bearing on this point, and admits " they do not all agree—some holding that the former trial is equally conclusive, whether pleaded by way of estoppel or given in evidence on the trial; while

others assert the doctrine, that though conclusive by way of estoppel, it is only material testimony when given in evidence on the trial, and may be rebutted;" and he adds, ". The decisions in this court have not been uniform, nor is it per fectly clear where the weight of authority or of argument lies.   As the very point has been decided in this court, in this cause," he adds, " I forbear entering more at large upon the question, conceiving that we are bound by the former decision." A writ of error was brought upon this last judgment to this court, and will be found reported in 8 *Wendell*, 9.  ·The judgment of the supreme court was unanimously reversed in this court, and a *venire de novo* awarded.   In this court, on that occasion, opinions were delivered by the Chancellor and Mr. Senator Sew ard.   The conclusions of both most clearly are, that in actions of assumpsit and ejectment, where a former recovery is intended to be interposed as a defence, if the party has had no opportunity to plead such former recovery as an estoppel, or where, from the nature of the action, such recovery ·cannot be specially pleaded so as to operate as an estoppel, yet the record of such former recovery may be given in evidence under the general issue, and the party against whom it is given, is as much concluded by it, as if it had been specially pleaded as an estoppel.   We are to consider this as the settled law : it harmonizes with the decision of this court in 1830, in the case of *Wright against Butler*, (6 *Wendell*, 289,) where the chancellor, who gave the only written opinion in that case, said, " where the party has no opportunity to plead the former verdict as an estoppel, the record thereof may be given in evidence, and is conclusive and binding on the party, the court and the jury, *as to every fact* decided by the former verdict."   This, then, was the point in difference between the supreme court, and this court : the former holding the evidence of the Manhattan judgment as not conclusive upon the heirs and devisees of Mrs. Osgood, and this court holding that it was conclusive.   The chancellor, on that occasion, voted for a reversal of the judgment of the supreme court, with a view to the issuing a *venire de novo*, that the evidence of the reversal by this court of the judgment of the Manhattan Company against the heirs and devisees of Mrs. Osgood, which did not appear in that case, might be given by the party.   A *venire de novo* was issued ; another trial had ; the record of the reversal by this court of the Manhattan judgment was introduced, and under the charge of the circuit judge, the jury brought in a verdict in favor of the plaintiff.   Application was again made to the supreme court for a new trial.   The supreme court denied the motion for a new trial, and rendered judgment on the verdict, upon which a writ of error was brought to this court, and is the case now under consideration.

Is is worthy of remark, that neither Mr. Justice Marcy, nor Chief Justice Savage, in the opinions by them delivered and already referred to, appear to consider as at all material, the fact, that the Manhattan judgment was reversed by this court.   This is considered by the chancellor as a material fact ; being a perfect or sufficient " answer to the verdict when urged by way of estoppel," citing *Mahony* v. *Ashton*, (4 *Harr. & McHenry*, 296 ;) *Richardson's lessee* v. *Parsons*, (1 *Harr. & John. R.*, 253 ; *Buller's N. P.*, 234 ;") and he adds, "In this case the judgment did not operate on the land, the verdict was a mere estoppel between the parties, and the moment the judgment was reversed and the verdict set aside, the estoppel was gone."   When, therefore, the chancellor says, as remarked by Chief Justice Savage, that the *decision* in 3 *Wendell* was correct, we are to understand that he concurs in the judgment pronounced by the supreme court in 3 *Wendell*, but that he does not agree to the reasoning or the law as put forth by the supreme court which led them to that judgment ; for they there hold, that the evidence under the general issue of the Manhattan judgment was not conclusive : a doctrine which the chancellor expressly repudiates, insisting that it is conclusive, but that it is rendered ineffectual by reason of the reversal of that judgment in this court.   Senator Seward concurs with the chancellor in this view, except that he does not inquire into the effect of the re-

### Wood v. Jackson.

versal of the Manhattan judgment, as regards the rights of the parties; nor are we to consider that this court, in the decision which it then made in this cause, adopted the remarks of the chancellor as the law of that case, that the reversal of the Manhattan judgment by this court destroyed the effect of the Manhattan verdict as an estoppel, and conclusive of the facts by that verdict settled between the parties. That question was not necessarily involved in that decision. We are, however, bound by the rule in that decision settled, to wit: that in ejectment, where no special plea of estoppel can be pleaded, the party may, under the general issue, give evidence of a former recovery or judgment, and the facts upon which it was founded, and that such evidence is conclusive upon the party. It has already been suggested, that in ejectment a special plea of a former judgment by way of estoppel, could not be pleaded, the party in that action being confined to the general issue only. Unless, therefore, he could be permitted to prove by parol, what lands specifically were shown upon the Manhattan trial to have descended or been devised, his rights would be entirely compromitted, and that too under color of law, which denies him the right to show that matter by a special plea. Suppose Wood had been permitted to plead specially; after setting forth the record, would he not be permitted to aver that lot No. 11 Cherry-street, was part and parcel of the lands proved before that jury to have descended or been devised? Can a doubt be entertained of his right to do so? His right to make the averment, establishes the right to offer proof in support of it. But there is no necessity to enlarge on this point, as this court, in this very case, on a former occasion, unanimously held that Wood had a right to offer such proof; and when offered and proved, it is not mere [121] evidence, but an actual estoppel, and conclusive of the rights of the party.

On the trial of this cause before the circuit judge, Wood did offer to prove " that the defendants in the Manhattan suit, on that trial, in support of their plea of *riens per descent*, gave in evidence the deed from Maria Osgood to Martha B. Osgood, the wife of E. C. Genet, conveying to her lot No. 11 Cherry-street, —and that the distinct question before the jury on the trial of that issue, was, whether that deed was or was not fraudulent and void as against the Manhattan Company; and whether lot No. 11 Cherry-street, was or was not an asset by descent or devise, in the hands of the defendants or some of them; that evidence was given to the jury touching the same by both parties; that the plaintiffs contended before the jury, that that lot was an asset, and the defendants that it was not; that the judge gave a clear and decided charge to the jury, that the conveyance of lot No. 11 Cherry-street, was fraudulent and void as against the plaintiffs, and that lot No. 11 Cherry-street, was an asset; that the counsel of both parties distinctly submitted to the jury the question, whether the lot was or was not an asset, and that the jury decided the question against the defendants; that exceptions were taken to the charge of the judge to the jury, which exceptions were afterward argued before the supreme court; which court confirmed the verdict, and gave judgment for the plaintiffs in that suit; and that the question in that suit, is the same question involved in this suit." The judge refused to allow any part of that evidence to be given to the jury, to which the defendant, Wood, took exception. In my opinion, the judge erred in refusing to admit this evidence. If received, it would have tended clearly to shew, that the validity of the deed from Mrs. Osgood to her daughter, the wife of Mr. Genet, was the determining point of the issue in the Manhattan suit. If the deed was valid, the judgment must have been in favor of the defendants, for then would the land not have descended or been devised, but would have come to them by grant; but being invalid, the verdict was necessarily in favor of the [122 plaintiffs, as the lands then did come to the defendants by descent or devise. It would seem that was indeed the only direct and necessary question to be decided. Every fact decided by that verdict is conclusive and binding upon the party. (6 *Wendell*, 289.) It was material therefore to know, whether

Wood v. Jackson.

the validity of this deed was or was not a fact decided by that verdict; if it was, then there is an end of this controversy.

In *Gardner* v. *Buckbee*, (3 *Cowen*, 120,) where two notes had been given for a vessel which afterwards proved to be unseaworthy, a suit was brought on one of the notes in the marine court of New York. The defendant pleaded the general issue, accompanied with notice of a total failure of consideration, on the ground of fraud in the sale of the vessel : a trial was had on that very point, and judgment passed in favor of the defendant. The plaintiff brought a suit on the second note in the common pleas ; and at the trial, the defendant offered in evidence, in bar of the suit, the record of the judgment in his favor on the other note in the marine court, contending that it was conclusive. On the trial, one of the marine court justices testified, that the matters directly in question before that court, were the unseaworthiness of the vessel at the time of sale, and the knowledge and concealment of that fact by the plaintiff; the court of common pleas decided the former judgment was no bar. Mr. Justice Woodworth, who delivered the opinion of the supreme court, after stating the rule as settled in the *Duchess of Kingston's case*, says : "The general principle does not appear to be controverted by the counsel for the defendant in error. But it is urged that the judgment in the marine court does not affirm any particular fact in issue in this cause, but is general and indefinite, and that from the language of the record, it cannot be inferred whether the two cases were founded on the same or a different state of facts. It is true, the record merely proves the pleadings, and that judgment was rendered for the defendant; without other proof, it would not make out the defence. The record shows that it was competent, on the trial, to establish the fraud of the plaintiff. Whether fraud was made out, and [123] whether this was the point upon which the decision was founded, must necessarily be proved by matter extrinsic the record. To do so, is not inconsistent with the record, nor does it impugn its verity. The jury must have passed on the fraud. It was directly in question." The supreme court, holding the former judgment to be a bar and conclusive, reversed the judgment. So, in *Burt* v. *Steenburgh* (4 *Cowen*, 559), where Burt brought trespass *quare clausum fregit*, and recovered, and afterwards brought a second action of trespass against the defendant for a renewed trespass upon the same premises upon which the former trespass had been committed ; the defendant on the former trial having attempted to defend himself under a title from George W. Featherstonhaugh, and contended and endeavored to prove that the *locus in quo* was in a patent granted to Weyfield and Clifford, and not in the Schoharie patent, as was contended by the plaintiff. It was admitted on the former trial, that if the premises were in the Schoharie patent, the plaintiff was entitled to recover ; if in the Weyfield and Clifford patent, the defendant was entitled to a verdict, and the verdict was for the plaintiff. The court held that the record in the former suit, followed by parol evidence that the premises in question were the same in both, was conclusive evidence of the plaintiff's title to the premises in the second action ; that it operated against the defendant by way of estoppel, whether it was pleaded or given in evidence in the second suit. It would be useless to multiply cases on this point. That the defendant had a right to offer this evidence, was distinctly held by this court in this very case, in 8 *Wendell*, 35, 45, the opinions of the Chancellor and Senator Seward fully concurring in this precise identical point ; and this was evidence, too, of a nature which would most clearly and distinctly operate to conclude the party, and establish the rights of a purchaser at a judicial sale ; it is an estoppel which runs with the land, enters into and becomes a vital part of the purchaser's title. (*Palmer* v. *Ekins*, 2 *Strange*, 818 ; *Trevivan* v. *Lawrence*, 1 *Salk.*, 276, S. C., 6 *Mod.*, 256 ; *Jackson* v. *Howe*, 19 *Johns. R.*, 83).

[124]    It is the duty of this and of all courts, to uphold and support judicial

Wood v. Jackson.

sales, authorized at the time by a valid, uncancelled judgment. They are made under sanction of law, pursuant to the judgment of a court of law. The law is not guilty of the absurdity of declaring that the defendant's property shall be sold to satisfy the plaintiff's debt, yet the purchaser shall not acquire the defendant's title to the property purchased. A system of jurisprudence would stand self-degraded, which should be so grossly inconsistent, insincere and mischievously hypocritical in luring and deceiving purchasers, to the prejudice of defendants and the sacrifice of their property. Sound policy, as well as un-questioned and sound law, have decreed otherwise; and this court has borne honorable testimony on this point in the case of *Woodcock* v. *Bennet* (1 *Cowen*, 734), in declaring that "it is well settled that where a judgment is reversed for error, the sale under the execution shall not be avoided." (*Manning's case*, 8 *Coke*, 192). The reason given is, that great inconvenience would follow a con-trary doctrine, so that none would buy of the sheriff in such cases, and execu-tion of judgments could not be done. In 8 *Coke*, 284, it was held, that if an erroneous judgment is given, and the sheriff by force of a *fieri facias* sell a term of the defendant, and afterward the judgment is reversed by writ of error, yet the term shall not be restored, but only the money, because the sheriff was com-manded and compelled by the king's writ to sell it (2 *Bacon*, 506); and Mr. Justice Woodworth, who delivered the opinion of the court in *Woodcock* v. *Bennet*, added, "The uniform current of authority sanctions this doctrine." See *Good-yere* v. *Juer* (*Cro. Jac.*, 246); *Jackson* v. *Roosevelt* (13 *Johns. R.*, 101); *Jackson* v. *Caldwell* (1 *Cowen*, 644). From the authority of this case, and it is binding on this court, I am at a loss to know why a *venire de novo* was awarded by this court, for the purpose of having introduced into the case the fact of the reversal of the Manhattan judgment by this court. That reversal could not affect the rights of a purchaser under the judgment before it was reversed, unless the case of *Woodcock* v. *Bennet* is to be totally disregarded by this court. It is very evident that neither Mr. Justice Marcy, nor Chief Justice Savage, nor [125] Mr. Senator Seward, in their opinions on this case, before referred to, ever deemed that reversal of any consequence in the case, and I must confess I cannot see that it has any material bearing or influence whatever on the decision of this cause; and, indeed, so do the counsel for the defendant in error consider it. They do not controvert but admit the general rule to be, that the title of a purchaser at a sheriff's sale will not be affected or impaired by a subsequent reversal of the judgment; but they labor to confine the application of that rule to a common execution upon a common judgment, and insist that it has no appli-cation to the Manhattan judgment, which was a special judgment—a judg-ment *in rem;* the purchaser under such special judgment not being protected by the rule, as is contended, necessarily loses his title, if the judgment under which he purchased should be afterwards reversed. *Jackson* v. *Hoag*, 6 *Johns. R.* 59, and *Covell* v. *Weston*, 20 *id.* 414, were cited in support of such application of the rule; but, in my judgment, they do not sup-port or establish any such position. The case in 6 *Johnson* decides the simple point, that the lands of heirs or devisees not taken or served with process in a suit by the creditor, cannot be taken in satisfaction of the ancestor's debt; the estate of the heirs being a separate and not a joint estate. The case in 20 *Johnson* merely decides that the heir takes land from his ancestor, subject to the right of the administrator to apply to the court of probates to sell the real estate to pay debts, and when that power is executed, and a sale has taken place, the title of the heir is gone, and he has nothing by descent.

Having come to the conclusion that the judge improperly excluded the evidence offered to be given to the jury on the trial of this cause, it is unnecessary to examine any of the other points raised or argued here. I am in favor of revers-ing the judgment of the supreme court, and that a *venire de novo* be issued, to the end that upon another trial, the defendant, Wood, may have an op-

[126] portunity to offer and have admitted the evidence which was improperly refused him on the last trial.

On the question being put, *Shall this judgment be reversed ?* all the members of the court (23 being present) with the exception of Senator MAISON and one other senator, voted in the *negative.*

Whereupon the judgment of the supreme court was AFFIRMED.

Judgment affirmed.