JUDGE COEER
delivered the opinion oe the court.
The appellant is the owner of two tracts of land, which are separated from each other by an intervening tract owned by the appellees. Deeming it necessary, in order to enable him to pass from one of these tracts to -the other, that he should have a private passway over the land of the appellees, he gave them notice thereof, and moved the county court of the county of Lincoln, where the land is situated, to establish a passway. Viewers were appointed and made report, in which they said that after looking over the ground designated in the order they were of the opinion that said passway was necessary for the applicant and should be established.
Upon the coming in of the report the parties appeared by attorney, and a motion of the appellees to dismiss the proceeding having been overruled, the court proceeded to establish the passway as reported by the viewers. From that order the appellees appealed to the Lincoln Circuit Court.
That court, upon hearing, dismissed the proceeding, on the ground that the statute authorizing the establishment of a private passway from one tract of land to another owned by the applicant is unconstitutional, and the correctness of that decision is the only question involved in this appeal.
' This question has never, to our knowledge, been directly passed upon by this court.
*24 By an act of assembly passed in 1820 (2 M. & B. 1253) power was conferred upon the several county courts to establish private passways over the lands of others when it was “absolutely and indispensably necessary to enable the party complaining to attend courts, elections, or a warehouse,” and, by an amendment passed in 1831, power was given to open passways to a meeting-house, and, by a still subsequent amendment, to a mill.
The Revised Statutes provided for the establishment of private passways when “absolutely necessary” to enable a citizen to attend courts, elections, a meeting-house, a mill, or a warehouse.
The question of establishing private passways has been repeatedly before this court under these statutes; but whether the statutes were constitutional or not is a question which seems never to have been referred to by either court or counsel.
It seems to be well established in much the greater number of states in the Union that such statutes are unconstitutional, except in those states in which they are expressly authorized by constitutional provision. (Cooley’s Constitutional Limitations, 530 and 531, and authorities there cited.)
These rulings are based upon the principle that the right of eminent domain does not imply a right to take the property of one citizen and transfer it to another’, but that the power of the sovereign to appropriate private property without the owner’s consent is limited to those uses and purposes in which the public have an interest.
Public use, it has been said, implies a possession, occupation, and enjoyment by the public or by public agencies. (Blood-good v. M. & H. R. R. Co., 18 Wend. 60.)
But this has evidently not been the view entertained by the bench and bar of this state. The long acquiescence in the statutes providing for the establishment of private passways *25 would seem to furnish satisfactory evidence that the true doctrine on that subject in this state is, that whenever a private passway is necessary to enable a citizen to discharge those duties which he owes to the public, and to enjoy the benefits of the government under which he lives, the private property of another citizen may be taken for the establishment of such passway upon compensation being made, and that such use will be regarded as public within the meaning of that term as used with reference to the right of eminent domain.
The public have a right to compel the attendance of any citizen upon the tribunals of justice, either as a witness, juror, or party, and have an interest in his attendance upon elections and the public worship of Almighty God, and because of these rights and interests the public also have a further interest that the citizen shall be provided with a practicable way to a market at which he can buy and sell, and thus provide himself with those things without which he could not discharge his civil and social duties.
In view of these considerations and the long acquiescence of the whole people of the state in the enforcement of the statute of 1820, and the amendments to it, and of the Revised Statutes, we have no hesitation in holding that the general assembly may, in the exercise of the right of eminent domain, authorize the establishment of private passways over the lands of others when it is necessary to enable any inhabitant of the state to attend courts, elections, churches, or mills, or to reach an established public highway.
Beyond this no statute has ever gone, so far as we have been able to discover, until the adoption of the General Statutes, which provide for the establishment of private passways when necessary to enable a citizen “ to pass from one tract of land to another owned by him” or to “a railroad depot most convenient'to his residence
It is difficult to see upon what principle the first clause of *26 the foregoing provision of the statute can be sustained. About the latter clause we express no opinion, because it is not necessary to a decision of this case.
What interest can the public have that the appellant shall have a private road over the land of the appellees? In what sense can it be said that such use would be a public use ? It may be said that it will enable the appellant to reach his land and improve it, and thereby to add to the general prosperity and to the aggregate wealth of the state. But for aught that appears the injury to the appellees will equal, or even exceed, the benefits to the appellant, and the wealth and prosperity of the country, instead of being advanced, will, in matter of fact, be retarded.
But if it appeared that the public would be greatly benefited in these respects, it could have no influence upon the decision of this question. It may be that if the appellant owned the appellees’ land, he would make it produce tenfold as much as it is now producing, and that he would so manage it as to double or quadruple its value; but no one will assert that this would authorize the general assembly to provide for the transfer of the land to the appellant upon payment of its value, to be ascertained by an inquest. The right of a citizen to the unmolested use and enjoyment of his land rests upon a far surer foundation. He may keep and use it in any lawful manner he chooses, subject only to the right of the public to take it, upon compensation previously made, for some public use; that is, to be occupied and enjoyed by the public, or for some use necessary to enable the public to command the services of citizens or to enable the citizen to perform his duties to the public.
The appellant, no doubt, has a right to a way that will give him an outlet from each of .his tracts of land, to enable him, or his tenants or employees, to attend courts, elections; a church, or a mill; but he has no right to have a passway over the lands *27 of the appellees simply to enable him to pass from one tract of land to another.
Counsel insist, with great earnestness, that we shall point to the particular clause of the constitution with which the statute is in conflict, and maintain that unless we can do so we can not properly decide that it is unconstitutional.
There is no express provision in the constitution of this state or of the United States inhibiting the passing of laws under which the property of one citizen may be taken, either with or without compensation, and transferred to another. But we repeat what was said by Judge Story in Wilkinson v. Leland (2 Peters, 657): “We know of no case in which a legislative act to transfer the property of A to B, without his consent, has ever been held a constitutional exercise of legislative power in any state in the Union. On the contrary, it has been constantly resisted, as inconsistent with just principles, by every judicial tribunal in which it has been attempted to be enforced.”
Such have been the repeated rulings of this court. The taxing power is one of the highest possessed by a free government, and no limit is, in terms, placed by the constitution upon its exercise, yet it has been repeatedly held that statutes for the imposition of taxes were unconstitutional, because the person attempted to be taxed could derive no benefit from the payment he was required to make. Such statutes have been correctly styled attempts at legislative spoliation.
The uniform decisions of the courts prior to the adoption of our present constitution were that the legislature had no power to authorize private property to be taken for the use of another private person; and the adoption of the present constitution may, upon a well-established rule of construction, be regarded as an approval of those decisions.
So, too, the provision that private property shall not be taken for public use without just compensation previously *28 made is an implied prohibition of the taking of such property for private use, either with or without compensation.
If the legislature may authorize private property to be taken for private use because no express inhibition can be found in the constitution, it would follow, upon the same course of reasoning, that such property might be transferred for private use by legislative act without compensation, and it would also follow that the legislative will would be the only limit to legislative power to despoil one citizen of his property for the benefit of another.
It would be a glaring absurdity to hold that the people, in framing their constitution, were so mindful of their rights of property as to prohibit its appropriation for a public use in which they are all interested, without compensation being first made, and yet that they left the legislature free to appropriate the property of one individual for the benefit of another at will,without providing for any compensation at all.
We have not entered into this discussion because we had the least doubt upon the subject, but simply on account of the earnestness and zeal with which the contrary view has been pressed by counsel.
The judgment must be affirmed.