CASE 64—ORDINARY—MARCH, 12, 1881.

# Perkins v. The Auditor.
# Pope v. Same.

### APPEALS FROM FRANKLIN CIRCUIT COURT.

The general assembly has no power to reduce the salary of the judges of criminal courts nor of the vice chancellor of the Louisville chancery court before their terms of office expire, and the act of the general assembly, entitled "An act to amend chapter 95 of General Statutes, title 'Salaries,'" approved April 13, 1880, so attempting to reduce their salaries, is unconstitutional.

STEVENSON & O'HARA FOR APPELLANT PERKINS.

1. It is not in the power of the legislature to diminish the salary of the judge of the criminal court for the twelfth judicial district during the continuance of his term of office. (Constitution, art. 4, sec. 25; *Ib.*, art. 18, sec. 13.)

2. This court, in Adams v. The Auditor (13 B. Mon., 150), held that the legislature had no power to deduct from the salary of a circuit judge, except under the thirteenth section, article eight, referred to, for neglect of official duty. (Nuttall v. Garrard, 2 Met., 106; Cochran v. The Auditor, 9 Bush, 8.)

BEATTIE & WINCHESTER FOR APPELLANT POPE.

1. The act of April 3, 1880, is void, because it attempts, without any neglect of duty on his part, to diminish, during the time for which he was elected, the compensation of the vice chancellor, fixed by law, in contravention of sec. 25, art. 4, and sec. 13 of the constitution.

2. Appellant's compensation is fixed by sec. 776 of the Civil Code of Practice. (Auditor v. Adams, 13 B. Mon., 150; 2 Met., 106.)

W. LINDSAY, FOR APPELLANT POPE.

1. The compensation of the vice chancellor is fixed by section 776 of the Civil Code of Practice. The act of April 13, 1880, does not repeal the section referred to, nor in any way affect it. (Chiles v. Monroe, 4 Met., 75; Jones v. Thompson, 12 Bush, 394; Rushing v. Sebree, *Ib.*, 199.)

2. The act of April 13, 1880, is unconstitutional, because it attempts to reduce the salary of the vice chancellor during the continuance of his term of office. (Auditor v. Cochran, 9 Bush, 9.)

ⁱJUDGE HINES DELIVERED THE OPINION OF THE COURT.

These cases were heard together, and as the law of the one is the law of the other, this opinion will apply to both.

In the case of Geo. G. Perkins it appears that he was in 1878 elected criminal judge in the twelfth judicial district for the term of six years, and at the time of the election and qualification in office the salary fixed by law and payable out of the public treasury was three thousand dollars per annum.

In the case of Alfred T. Pope, he was elected in 1878, for the term of six years, vice chancellor of the Louisville chancery court, at which time the salary fixed and payable out of the public treasury was three thousand dollars per annum.

On the 13th of April, 1880, the legislature passed an act reducing the salary of each to twenty-four hundred dollars, and on the refusal of the Auditor to pay more than the twenty-four hundred dollars from the time this act went into effect, a mandamus was applied for to compel the payment of the salaries at the rate of three thousand dollars per annum, and on the refusal of the court below to grant it, an appeal was in each case taken to this court.

The question presented is as to the constitutionality of the act of April 13, 1880, so far as it applies to judges whose term of office had not then expired.

The determination of this question depends upon the construction of section 13 of article 8 of the constitution of this state, which is as follows:

"It shall be the duty of the General Assembly to regulate, by law, in what cases, and what deductions from the salaries of public officers shall be made, for neglect of duty in their official capacity."

The inquiry is, first, are appellants "public officers" within the meaning of this provision? and secondly, if they are "public officers," does the section quoted restrict the power of the legislature in the reduction of salaries to cases where there has been a neglect of duty?

That appellants are embraced in the term "public officers," we think is perfectly clear.

The jurisdiction exercised by each of these courts is a part of that belonging at the time of the adoption of the constitution to the circuit courts, and the authority to create them is conferred by section 1 of article 4, which provides that the judicial power of the commonwealth shall be vested in the Court of Appeals, the courts established by the constitution, and such inferior courts as the general assembly may establish. Circuit courts are established by the constitution, and it is expressly provided that the salaries of the judges thereof, as well as the salaries of the judges of the Court of Appeals, shall not be diminished during the time for which they were elected; and but for the provision above quoted, there would have existed no authority in the legislature to reduce the salaries of the circuit or appellate judges, for any cause.

These provisions in regard to the salaries of the judges of the Court of Appeals, and of circuit judges, and that restricting the power of the legislature in the reduction of the salaries of public officers to cases where there has been a neglect of duty, was evidently intended to place the administration of justice above and beyond the influence of the prejudice or passions of the hour, the wisdom of which was demonstrated in the contest between "The Old" and "The New Court," which was terminated in 1826.

The legislature having, under express authority contained in the constitution, created these courts with a jurisdiction not inferior, except in extent, to that exercised by the circuit courts, and being in fact an essential part of such jurisdiction existing at the time the constitution was adopted, there appears no reason why the safeguards thrown around the circuit courts should not also present a barrier to legislative interference with the salaries of the judges of such courts.   Such judges are, in every essential, as much "public officers" as the judges of the circuit courts.   They are chosen by the people as circuit judges are chosen; they exercise in dignity the same jurisdiction, and are paid in the same way out of the public treasury.

We are not to be understood as saying that the judges of such courts are circuit judges within the full meaning of the terms of the constitution, because in that case we would be compelled to hold, that when the courts were once established, there was no power in the legislature to abolish them. The power to abolish does not always, and of necessity, include the power to modify.   Whether the one includes the other is a question of intention to be determined from a consideration of the whole instrument under which the power is exercised.

A cognate matter was determined by this court in Auditor v. Cochran, 11 Bush, 7.   In that case there was an act of the legislature directing that a chancellor *pro tem.* of the Louisville chancery court should be paid out of the salary of the chancellor without regard to the cause of the failure of the chancellor to preside; and notwithstanding the constitution expressly authorized the legislature to repeal the court, it was held that there could be no deduction from the

salary of the chancellor, unless for neglect of duty as speci-
fied in section 13, article 8, of the constitution.

The term "public officers" does not apply to any officers.
except those who are paid a salary out of the public treas--
ury.   It has no reference to cases where the compensation
of the officer is derived from the fees of his office, nor to any·
salary not paid out of the public treasury.

The next inquiry is: Does the fact that the constitution
provides that the salaries of "public officers" may be dimin-
ished for neglect of duty take away, by implication, the
power to diminish for any other reason?

We think it does.   If that section of the constitution
does not operate as a restriction, it is without meaning,
for, in its absence, the legislature would have the power·
to reduce the salaries of all public officers, except appellate·
and circuit judges, for any cause, which cannot be done, as
we have seen in the case of The Auditor v. Cochran.   Judge-
Cooley, in his Constitutional Limitations, page 78, has ex-
pressed the rule as follows:

"When the constitution defines the circumstances under·
which a right may be exercised or a penalty imposed, the
specification is an implied prohibition against legislative
interference, to add to the condition, or to extend the pen--
alty to other cases.

This is a familiar principle that is recognized in many
decisions of this court construing our constitution, among·
which may be mentioned, The Auditor v. Adams, 13 B. M.,
150; Brown v. Grover, 6 Bush, 1; Robinson v. Swope, 12
Bush, 21; Williams v. Commonwealth, MS. Opin., 1880.

Judgment reversed, and cause remanded with directions.
to issue the mandamus in each case.