IN THE MATTER OF THE APPRAISAL OF DAMAGES OF PETER TOWNSEND, APPELLANT, FOR LANDS, ETC., TAKEN BY MORRIS CANAL AND BANKING COMPANY, RESPONDENTS.

IN THE MATTER OF THE APPRAISAL OF DAMAGES OF PETER TOWNSEND AND WILLIAM H. TOWNSEND, APPELLANTS, FOR LANDS, ETC., TAKEN BY MORRIS CANAL AND BANKING COMPANY, RESPONDENTS.

*Eminent Domain—Foreign Corporation—Retroactive Legislation—Unconstitutionality.*

An act of the Legislature taking land in this State for a public use is not unconstitutional because the instrumentality employed for that purpose is a corporation created by the laws of another State:

Nor because such corporation derives a pecuniary benefit from the use of the land so appropriated:

Nor because the lands appropriated are to be used for the maintenance of a navigable canal which runs along the border of the State, but without its limits.

If the use be in its nature public, the Legislature are the sole judges of the question whether the benefit to our citizens or to the State is such as to warrant the taking of private property therefor: and are also the sole judges of the question what supervision or control over the use should be retained in order to secure the contemplated public benefits.

But where such lands have been already taken or appropriated without authority, or have been injured by the construction of such canal and a reservoir of water therefor by flooding, &c., an act of the Legislature, authorizing the appointment of commissioners to appraise the damages already sustained, and making their award and the payment or tender of the sum awarded a bar to any action by the owners to recover such damages, is unconstitutional and void.

The party injured has a right to maintain his action and have a trial by jury, and cannot constitutionally be required, by retroactive legislation, to submit his cause of action to a tribunal not proceeding according to the course of the common law.

THIS is an appeal from an order of the Supreme Court for the appointment of commissioners to appraise the Appellants' damages to lands flooded by the erection of a dam to form a reservoir in Greenwood Lake, in Orange county, to feed the

Respondents' canal; and from an order confirming the appraisement made by the said commissioners. The Morris Canal and Banking Company was incorporated in 1824, by an act of the Legislature of New Jersey, to " construct a Canal to unite the river Delaware, near Easton, in the State of Pennsylvania, with the tide-waters of the Passaic, in New Jersey."

Another act, passed in 1828, authorized the company " to continue the canal to the waters of the Hudson, at or near Jersey City." The company was authorized to take all land and water necessary for the construction and use of the canal and its feeders, paying a just compensation therefor.

The twenty-fifth section of the act of 1824 provided " that the said canal, when completed, shall forever thereafter be esteemed a public highway, free for the transportation of any goods, commodities, or produce whatever, on payment of the tolls." Long Pond, or Greenwood Lake, lies partly in Orange county, in this State, but mostly in New Jersey, where it has its outlet. In 1837 the company built a dam at the outlet, about eight feet higher than the old dam then existing there, in order to form a reservoir and feeder for its canal.

By raising the dam, some of the Appellants' land on the margin of the lake was flooded.

In 1855 an act was passed by the Legislature of New York, authorizing the corporation, in case it could not " agree with the owners of any real estate in this State required for, or which has been injuriously affected by, the construction, maintenance, or use of a reservoir of the said company, formed by a dam across the outlet of the pond extending into the county of Orange, in this State, known as Long Pond, or Greenwood Lake, for the purchase of any such real estate, or for the injury which has been or may be occasioned thereto, by the construction of such reservoir, or by the raising of the dam thereof, or any other works, uses, or purposes connected therewith, it shall be lawful for the said company, their successors or assigns, to acquire title to any such real estate, or to have the compensation for such injury appraised in the manner and by the proceedings hereinafter mentioned "

(Laws of 1855, ch. 296, p. 506, § 1). The second section provides that the company may petition the Supreme Court to appoint commissioners of appraisal, describing in the petition the real estate, the object for which it is required, etc., and that a copy be served and notice given. Other provisions are made, not material to be stated. A petition was presented for the appointment of commissioners, under the act in question, to ascertain and appraise the compensation to the Appellants for the damages and injuries by the actual overflow and injury to their lands by the erection, maintenance, and use of the dam and reservoir. The Appellant opposed their appointment, on the ground that the act was unconstitutional. The Court overruled the objection, and made an order for that purpose in February, 1856, and on appeal the order was affirmed. Commissioners were appointed, and proceeded and made a report for damages, the Appellant not appearing. The report was presented for confirmation, which was opposed on the same ground, and confirmed. The Appellant appealed to the General Term, where the order was affirmed in May, 1863, and the Appellant appealed to this Court.

*J. Larocque* for Appellants.

*Joshua M. Van Cott* and *David F. Gedney* for Respondents.

WOODRUFF, J.—That the State may, in virtue of its right of eminent domain, take private property for public use upon making compensation therefor, is not questioned on this appeal.

That, for the ascertainment of such compensation, where it is not paid by the State, in all cases (except the case of "private roads") it is competent to proceed by application to the Supreme Court, and the appointment of three commissioners to be appointed by that Court to determine the same, is not and cannot be disputed (Const., art. 1, § 7; Act of April 11, 1855 ; Sess. Laws, ch. 296, p. 506).

It is far too late in the history of legislation and of adjudication in this country and in this State to claim that private property may not be taken for what are, in common parlance, called "public improvements," such as railroads and canals, with their inci-

dental and reasonable conveniences and appurtenances, notwith-standing the work is done by individuals or a corporation, who are to derive a pecuniary benefit therefrom, if the Legislature deem it for the public interest (Bloodgood v. Mohawk and Hudson Railroad Company, 18 Wend. 9).

If, then, the use is public, and the power to take and appropriate may be conferred upon individuals or corporations, I know of no restraint upon the Legislature in the selection of the parties to whom the power to take and apply shall be delegated. Certainly the Constitution contains neither prescription nor limitation. It is clear, I think, and has so been uniformly held ever since the case above referred to, that as to the instrumentality employed, and the manner in which the property shall be taken and applied to the public use, the Legislature are the sole judges. Their supreme power over the subject is qualified only by the three particulars:—the use must be public; compensation must be given; the amount required as compensation must be ascertained by a jury, or by not less than three commissioners appointed by a Court of record.

It has, indeed, been said that the right of eminent domain implies the right in the sovereign power to determine the time and *occasion*, and as to what particular property it shall be exercised (Heyward v. The Mayor, 7 N. Y. 325). This can hardly be supposed to import that the Legislature can, by its mere declaration, override the Constitution; that, by declaring the use to be public, when it is, within the Constitution, a private use, it can authorize the property of one citizen to be taken from him and given to another, for a compensation to be ascertained in the manner above stated; but only that where the use for which the property is desired is, in its nature, public, the Legislature are the supreme and final judges of the question whether the public necessity or benefit is such as to call for the exercise of the power; whether the time is a fitting one; what particular property may be taken, and in what manner, in respect to the instrumentalities to be employed for the purpose,—whether State officers, individuals, or corporations. All these are purely matters of discretion, within the ex-

clusive cognizance and jurisdiction of the Legislature, and in those matters I apprehend no Court can review its action.

There is nothing, then, in the Constitution that requires that the right to construct a railroal or a canal, or other public work, shall be conferred, and only conferred, upon our own citizens, or upon a corporation organized for the purpose, or upon a corporation specially created by the Legislature itself. That is subject to legislative discretion.

Nor is there anything in the Constitution which prescribes what control over the subject, after the appropriation to the public use, the Legislature shall retain to itself, in order to secure the contemplated public benefits. That is left to the wisdom of the Legislature. There are general rules of law which may be invoked to prevent abuses, even though the use be not guarded by any express reservation of visitorial powers.

In this view there is no constitutional inhibition which restrains our Legislature from exercising the right of eminent domain, and condemning land to the public use, and employing, as an instrument to carry the appropriation to the public use into effect, an individual or a copartnership of individuals residing in this or in another State, nor from, in like manner, employing a corporation created by another State for the like purpose.

The example cited to us, in which the New York and New Haven Railroad Company, incorporated by the State of Connecticut, are authorized to construct their railroad through Westchester county, is an illustration, the legality of which cannot, I think, be questioned. And instances might be multiplied in which railroads have been constructed in part through or in States other than the State of their incorporation.

The act of our Legislature authorizing such corporations to do the act, not only recognizes their legal existence, but, per se, makes them, in contemplation of the laws of this State, corporations pro hac vice; and their acts, done in pursuance of that authority, will be, not by *comity* alone, but by *law*, corporate acts.

What precautions shall be adopted to secure the appropriation of the property to the sole purposes intended, what security this

State shall have against abuses, and what supervision the State shall retain over the acts of such grantees, if any are needed beyond the ordinary jurisdiction and power of our Courts, the Legislature has sole and conclusive power to determine.

If any question discussed on this appeal, relating to the power of the Legislature to authorize the Respondents to take lands in this State for their reservoir, remains, it is whether this Court can say that taking lands along the shore of Long Pond, in the sense in which it was authorized by the act, viz., by flooding it in the making of such pond or reservoir for supplying the Respondents' canal, is taking private property for a public use?

The Respondents' canal runs from the Delaware River, in New Jersey, to the Hudson River, at a point opposite our chief commercial city, New York. In its course it passes near our southern border, and for its supply a reservoir is needed, which requires the basin of Long Pond, a portion of which is within our State, and the employment of which, by raising the water, appropriates some lands around its shore.

If the canal itself came within our limits, it would not be doubtful, according to the views I have expressed, that the Legislature could authorize its construction, and the taking of lands for the purpose; and, in that case, the construction of the reservoir for its supply would be no less within the power.

It does not follow, because the canal is outside the State limits, that its construction and maintenance are not for a public use, within the meaning of our Constitution. If it were within our limits, what are the public benefits to result from its construction? Not merely that our citizens may use it for tranportation or travel. Providing transportation to market and facilitating intercommunication are some of the public purposes of such improvements; but communication between our chief cities and the productive regions which lie outside our State, and intercourse with those who dwell there, are as truly objects of public interest and advantage as between two sections of the State itself. Besides, the Court cannot say that the Morris Canal does not run within the reach of a portion of our own citizens, and directly aid them in

the conduct of their intercourse with our eastern border, or the counties along the Hudson River, to which it runs.

The work promoted belongs to a class long recognized as public in its character; and I think it was for the Legislature to say whether the benefit to result to our own citizens, by facilitating internal commerce for the promotion of our trade or otherwise, was sufficient to call for the exercise of the power to take private property therefor; and that the decision of the Legislature on that point is not subject to review in this Court.

There is, however, another question which involves much greater doubt.

It appeared by the act of 1855 (Sess. Laws of 1855, ch. 296, p. 506), under which these proceedings were had, that the Respondents had already, in whole or in part, made the construction which wrought damage to lands in this State. It appears by the petition herein that the lands of the Appellants had actually been flooded for years before the act in question.

The act provided not merely for the taking of land for the purposes of the reservoir, but for making compensation for the damages theretofore done without authority.

It provided for an application to the Supreme Court for the appointment of commissioners, and an ascertainment and determination by them of the compensation which ought justly to be made by the Respondents . . for the taking of such real estate, in case the same shall be taken, or for the injury *which may have been* or shall be occasioned thereto by such reservoir or construction, . . in case such injury is sought to be appraised. And the payment, tender, or deposit of compensation, so ascertained, is declared to vest in the Respondents the title to the real estate taken; and, in case the said compensation shall have been made for damages to, or for injuriously affecting, any real estate as aforesaid, then such persons who have been made parties to the proceeding shall be barred from all claim or demand on account of injury or damages to the real estate so injuriously affected, and the Respondents are discharged from all claim or action on account thereof, and of any matter specified in the said petition.

In this case the Respondents' petition states the erection of the dam to create the reservoir; the actual overflow and injury to the lands of the Appellants; that they are now overflowed and injuriously affected by means of the erection, maintenance, and use of the dam and reservoir aforesaid; that the use and occupation of said lands and premises has been, from the time of the erection of said dam, and now is, in good faith, required by your petitioners, for the maintenance of said reservoir, and the necessary works, uses, and purposes connected therewith, and is, in good faith, intended to be so used; that they have offered the Appellants a fair compensation for all the damages and injury to said lands and premises, and have endeavored, but are unable, to agree with the Appellants for the said damages and injury. And the prayer of the petition is for the appointment of commissioners "to ascertain and appraise the compensation to the owner of said lands and premises, for the damages and injuries aforesaid."

The report of the commissioners recites their appointment "to ascertain and appraise the compensation to said Peter Townsend, for the damages and injury to the lands described in the petition in this matter;" and they report, that "we have ascertained and determined the compensation which ought justly to be made by the said Morris Canal and Banking Company to said Peter Townsend, for the damages and injury aforesaid, and we hereby appraise the same at the sum of $140." The order appealed from confirms this report.

The proceedings in the matter of Peter and William H. Townsend are of the same purport.

Here is, obviously, no taking of the lands with intent to vest the title in the canal company. It is simply an ascertainment of the damages done to the lands of the Appellant. It does not profess to be a proceeding to determine the compensation to be made "for the taking of such real estate," but "for the injury . . occasioned thereto by such reservoir," in a case in which "such injury was sought to be appraised," according to the language of section five of the statute.

A liberal construction of the proceeding, in connection with the

act under which it was had, with a just regard to the design and purpose of the act and the proceeding under it, may warrant the holding, that this assessment of damages covers all future or prospective injury resulting from the overflow by reason of the dam, as then constructed, although the language of the prayer and of the report is especially apt to describe damages already sustained.

Hereupon, the inquiry arises : Is it within the constitutional power of the Legislature to deprive the Appellant of a right to sue for and recover his damages for an unlawful overflowing of his lands by the act of another—compel him to submit to the award of three commissioners appointed to view the premises and hear such proofs as the parties may offer, or be barred of his claim and right of action for the injury ?

In the erection of the dam and the flooding of the lands of the Appellant, the Respondents were wrong-doers.    No authority derived from the State of New Jersey was a justification.    The cause of action was complete, and the right of recovery for the damages absolute.    How then could the Legislature deprive the Appellant of his resort to the ordinary Courts of Justice for redress ?    If the Respondents would not, or did not, make compensation for the wrong, he was entitled to appeal to the Courts of common law and have his damages assessed by a jury.    No public *use* existed for which those damages were properly a subject of condemnation and appropriation under the power to take private property for public purposes.    As to the future, the power to authorize the construction of the reservoir may involve the power and duty to provide for the consequential damages, and for their ascertainment by a summary proceeding, although the title to the land was not taken.

The claim of the Appellant, and his cause of action, was one to which the right of trial by jury, " in all cases in which it has been heretofore used," was especially appropriate, and such trial in such cases is guaranteed by the Constitution.

If the Respondents saw fit to commit the wrong, instead of waiting for legislative authority to construct their reservoir, they became liable for damages, from the payment of which they could

not be relieved by any retroactive legislation, and for the ascertainment of which the Appellant could not be compelled to submit to the appraisal of a tribunal not proceeding according to the course of the common law.

So far, then, as the act in question provided for a summary proceeding, to ascertain the damages sustained by a prior wrong, or illegal overflow of the lands of the Appellant, and barred him of any action for redress, I think it was unconstitutional and void.

If it were possible to say upon these proceedings, that the damages awarded were not for past injury, or to sever the damages, distinguishing between the past injury and the future use, there might be opportunity to declare the proceeding valid in respect to the right to continue the erection, and effective as a protection against actions for any damages accruing after payment or tender of the sum awarded.

But, as a bar to an action to recover the prior damages, the proceeding cannot avail, and it is our duty so to declare.

The case of Wynehamer v. The People (13 N. Y. 378), holds that where no discrimination is made, in the statute authorizing the destruction of intoxicating liquors, between property which was already owned (and could not be destroyed without violating the Constitution) and property thereafter manufactured or purchased, the act must be declared unconstitutional and void (The People v. Haws, 37 Barb. 440; Taylor v. Porter, 4 Hill, 140.)

It follows that the order or judgment appealed from must be reversed.

MASON, CLERKE, GROVER, and DWIGHT, J.J., concurred.

MILLER, J. (dissenting). The principal and most important question which lies at the foundation of this case, and upon which it must be determined, is, whether this Legislature possess the constitutional power to authorize the taking of private property for the use of a foreign corporation, organized by the laws of an adjoining State, and located within the borders of that State, upon the payment of a just compensation to the owner of the property thus taken.

This involves the right of eminent domain, by which the people, in their sovereign capacity, have a right to resume the possession of property in the manner directed by the Constitution and laws of the State, whenever the public interest requires it, upon payment of just compensation (Constitution of New York, art. 1, § 6; Constitution of U. S., Amendments, art. v.). The use must be for the public, and the compensation must be just, to authorize the Legislature to exercise this right. This inherent right, which is one of the attributes of a sovereign and independent State, does not confer upon the sovereign power the privilege of taking the property of a citizen and transferring it to another, or to a corporate body, when the public interest does not require such an act, but is maintained upon the great principle that the interests of individuals must yield to the public wants and necessities. The right of eminent domain has been upheld in this State by a long series of adjudications, and it has been decided that, in cases of public improvements, where benefit would result to the public, it may be exercised either through the agents of the Government, or through the medium of corporate bodies, or by means of individual enterprise (Beekman *v.* Saratoga & S. R. R. Co., 3 Paige, 45, 72, 73; Varick *v.* Smith, 5 id. 137; Bloodgood *v.* M. & H. R. Co., 18 Wend. 60, 77; The People *v.* Smith, 21 N. Y. 595; Buffalo and N. Y. R. R. Co. *v.* Brainard, 5 Seld. 106; The People *v.* The Mayor of Brooklyn, 4 N. Y. 419). The Legislature, as a general rule, is to determine when public uses require the assumption of private property, and unless it entirely exceed its authority, the discretion which it has exercised is not the subject of judicial review. It cannot take property from one man and give it to another, or vacate a grant under pretext of public use, and any such arbitrary exercise of power would be an infringement upon the spirit of the Constitution, and beyond the powers delegated to the Legislature by the people (2 Kent's Com. 340; Hayward *v.* The Mayor of N. Y. 3 Seld. 324, 5. Seld. 109; The People *v.* Wynehamer, 13 N. Y. 378; Bank of Rome *v.* The Village of Rome, 18. N. Y. 38; People *v.* Toynbee, 2 Park. 490. See also authorities above cited).

The canal of the Respondents is recognized in its charter as a public highway, free for the transportation of goods, and, in the act in question, as a foreign corporation, and terminates at Jersey City, directly opposite the city of New York.

The act under which the proceeding under review was instituted (S. L. of 1855, chap. 296) does not, as seems to be supposed, and as is claimed by the Appellant's counsel, delegate the right of eminent domain to the Respondents, but is the exercise of that right by the Legislature, which in its wisdom assumes to take the property in question, and appropriate it for certain purposes specified in the act, which it declares to be for " public use."

When the Legislature thus authorizes a corporation to take private property within the State, it does not delegate its power, but it exercises the power in the same manner as has been frequently done in reference to railroads and other corporations within the State.

The true question which we are called upon to decide, then, is not whether the Legislature delegated the right of eminent domain to a foreign corporation, but whether the property of the Appellant was taken for public use, within the spirit and meaning of the provision of the Constitution which has been cited. The term " public use " evidently means for the benefit of the public, and if the corporation who was authorized to take the property had been organized within this State, there would be no question as to the authority of the Legislature to pass the act in question. Nor do I think that it changes the aspect of the case if it appears that the canal of the Respondents can be used and enjoyed by the citizens of this State, or for their benefit. As we have seen, it terminates directly opposite the city of New York, the great emporium of the American continent, where concentrates not only the internal trade and business of all the States in the Union, but, to a considerable extent, the trade and commerce of the whole world.

It has the most important business relations with the nearest as well as the most remote parts of the country, and from all these pour in the products and the fruits of the industry of the country, to add to its prosperity, and to increase the wealth of its citizens.

Every avenue opened for the accommodation of those who may have occasion to contribute to its augmenting inland trade, or that facilitates the transportation of the vast amount of merchandise which is disposed of within its precincts, or the entrance or departure of those who may have occasion to visit or to leave it, is of paramount importance.

Every business man and every owner of property in this great mart is, therefore, interested in maintaining, preserving, extending, and increasing conveniences for inter-communication, and for transportation. Every railroad and canal, and every means of conveyance or communication, furnished by private capital or public enterprise, must increase its means of producing wealth and the value of the property located within its limits. The railroad in Connecticut, which, by the act of the Legislature of this State, is allowed to extend its constructions and operation beyond State limits; the railroads which cross the State of New Jersey, and which are only separated from it by the flowing waters of the Hudson; the canal of the Respondents, which is similarly situated, all contribute benefit and advantage to the city, and to the whole State, and whole country. Can it be said that either of these means for the promotion of internal commerce, and the advancement of commercial prosperity and the good of the whole country, which every citizen is entitled to use and none are deprived from enjoying to the fullest extent, are merely corporations entirely private in their character, and of no earthly benefit to the public at large? That they only benefit individuals, and not the public, because a narrow and invisible boundary-line separates them from the State of New York? They are not organized for private purposes alone. They are not limited and confined to individual use. They are open and free to all, and the whole public are entitled to enjoy their benefits and privileges. They are instituted, designed, carried out and employed for *public use.* It matters not that a boundary-line separates their immediate connection; and it would be a narrow and limited construction to hold that this fact prevents their being appropriated and dedicated to the public use. They are quite as much for the benefit of the public, and for the

public use, as the great works of internal improvement which individual capital and the public authorities of the State have planned, constructed, and brought to a successful consummation within the borders of the State. The railroads that connect New York with Massachusetts, Rhode Island, and Connecticut, and other great States which surround New York, are all part of a great system of internal communication, which, stretching across a vast and extended territory, binds the whole continent together in the bonds of successful enterprise.

To say that the vast channels for trade, commerce, traffic, travel, and enjoyment, are not for the public use of the people of the State, when they meet upon its borders, and accommodate the public at large, is to hold adversely to all rational rules of interpretation applicable to questions of such a character.

Suppose the depot of the Morris Canal Company had been erected immediately across, and adjoining the boundary-line of the State of New Jersey, and within the limits of New York; could there be any doubt that the land taken for such a purpose would be for the public use? Most certainly there would not. It does not, then, alter the case because the Hudson river separates the terminus of the canal company from immediate connection with the State of New York. It accommodates the citizens of New York precisely as much, and the public are equally benefited and as much interested, as if the depot was located on the opposite side of the river; and it is quite as much for the public use; nor is it essential, in my opinion, that the canal should be located within the borders, or that the company should derive its power by means of the Legislature of the State of New York, to establish that it is for the public use. It is sufficient that the citizens of this State are entitled to enjoy and derive benefits and advantages from its operations.

It may also be observed, in this connection, that it has been heretofore the policy of the State of New York, through its Courts and public authorities, to recognize foreign corporations; to allow them to prosecute their business, and, in some instances, to grant to them extensive privileges.

With this view, at least one railroad, incorporated in another State, has been extended by direct enactment, and at least another one, similarly organized, has been allowed to extend its line of communication by a separate charter. The same privilege has been conceded by the State of New Jersey to New York, in one instance, if no more. The rules of comity demand thus much, and it would be an unwise and narrow-minded policy for a sovereign State, like New York, to refuse to extend to the corporation of a sister State, which is contributing to its welfare, and from which it is deriving a direct advantage, the trifling boon conferred by the act in question.

It should not be refused, except upon the clearest conviction that it is unwarranted, unauthorized, and in conflict with a constitutional enactment. In any aspect in which the question may be considered, I am of the opinion that the Constitution has not been violated by the general scope and purpose of this act.

The provision of the act vesting titles in real estate in the company "for the purposes of its incorporation," and divesting all persons who have been made parties to the proceedings from any interest in the real estate, "during the corporate existence of said company," etc., I am inclined to consider as an appropriation for *corporate* purposes only. The title of the act, and its provisions, indicate very clearly its object; and when the land taken ceases to be useful or available for such a purpose, the parties whose rights have been acquired would occupy the same position as any other owner of real estate which had been taken, by the exercise of the right of eminent domain, for public improvement.

Conceding, however, that this view of the subject is entirely erroneous, yet, the Legislature having the right to take property under the Constitution, the extent of the interest in the land authorized to be taken must, I think, rest very much in its sound discretion.

The point taken, that the act is unconstitutional because it purports to authorize the assessment of damages which have been sustained prior to its passage, cannot, I think, be maintained. These damages are so intimately identified with the property, that

it is difficult to discriminate between the two.   But, admitting that the owner of the land could not be deprived of a right to a trial by jury for antecedent damages, it does not in any way impair the right to appoint commissioners to appraise the damages for taking the land.   If the provision of the act was void as to damages previously accruing, it does not affect its validity in other respects.   No question is made by this appeal as to these damages, and it nowhere appears distinctly that the commissioners included any such damages.   If they did so without authority, and in violation of any provision of the Constitution, I think that the Appellant could have sustained an action for such damages as could properly be recovered, and while the proceedings had would be valid and in force as to the taking and appropriation of the land, which is authorized by the Constitution, they would be ineffective beyond this.   The Appellant could not, therefore, be injured by sustaining the proceedings of the General Term.

No other questions are made which require discussion, and the order of the General Term must be affirmed.

Judgment reversed.

JOEL TIFFANY,
State Reporter.