PATRICK MORAN AND OTHERS, RESPONDENTS, *v.* JOHN R. LYDECKER AND SAMUEL M. SCHAEFFER, AS RECEIVERS, ETC.

*Joinder of parties plaintiff — persons sustaining separate and special damages (as owners of separate lots on a street) cannot join as plaintiffs — The insolvency of a corporation does not work a forfeiture of its rights — When a receiver of an insolvent railroad company may proceed with the construction of its road.*

Several owners of separate lots fronting on a street cannot join in bringing an action to restrain the construction of an elevated railroad thereon on the ground that the company has not made, and does not intend to make, compensation to any of them for the damages they will severally sustain by reason of the construction and operation of the road.

The fact that a railroad corporation has been alleged to be insolvent and that a receiver thereof has been appointted in an action brought against it, does not authorize the court to restrain the receiver from proceeding to construct the road, as authorized by the company's charter, so long as its corporate rights and franchises have not been adjudged to be forfeited in an action brought against it by the people.

APPEAL from an order made at a Special Term continuing an injunction restraining the defendants from entering upon York street, in the city of Brooklyn, for the purpose of constructing an elevated railway thereon.

The Brooklyn Elevated Railway Company was incorporated by chapter 585 of 1874, as amended by chapter 422 of 1875. After it had commenced the construction of its road an action was commenced against it by the attorney-general to compel the directors to account and to restrain them from any further dealings with the property of the company, and by the trustees of a mortgage given by it to

procure its foreclosure. Receivers were appointed in each action, but subsequently the receivers appointed in the action brought by the attorney-general were discharged.

On the 23d day of February, 1881, an order, entitled in both actions, i. e., that of the *Farmers' Loan and Trust Company, Trustee,* v. *The Brooklyn Elevated Railway Company and others,* and that of the *People of the State of New York* v. *The Same,* was made at Special Term authorizing and directing Lydecker and Schaeffer, receivers, to proceed with the construction and equipment of the railroad, to purchase all the material, employ all the labor and defray all the expense incident to the completion of the road; and for this purpose the receivers were authorized to issue certificates of indebtedness on their part to an amount not exceeding $2,500,000, which certificates were to constitute a debt of the receivers, and be a first lien prior to the mortgage and prior to all other liens on the property of the corporation.

From an order restraining them from proceeding so to construct the road this appeal was taken.

*Ashbel Green,* for the receivers, appellants.

*Wingate & Cullen,* for the Brooklyn Elevated Railway Company, appellant.

*Wm. C. De Witt,* for the respondents.

CULLEN, J.:

The several plaintiffs are owners of separate lots fronting on York street in the city of Brooklyn. None of them have title to the street itself. The complaint seems to be drawn in a double aspect. It alleges that the defendants have not authority to construct or operate the road for reasons set forth, and it then further alleges that no compensation has been made or is intended to be made to any of the plaintiffs for the damages to be severally suffered by them on account of the construction and operation of the road. The relief asked is an injunction restraining the defendants from entering upon any part of the whole street.

In its first aspect the action is to restrain a public nuisance from

which the plaintiffs suffer special damage. In the latter it is to restrain the invasion of property rights that are separate and distinct as to each piece of land and as to each plaintiff.

In this latter aspect it is evident that no joint action can be maintained. In the case of a railroad constructed through the country, no one would contend that the owners of several and distinct farms could bring a common action to prevent the road being built across those farms without compensation. In this case, if the abutter has any special easement or property in the street that will be invaded by the construction of the railroad, it is evidently only in such part of the street as is adjacent to and gives access, air and light to his adjoining lot. He has no special easement or property in other parts of the street, or in those which subserve the same purpose for other and distant lots. But this action covers the whole street, in many parts of which neither the plaintiffs jointly, nor any one of them singly, can upon any theory have a special property or easement.

For aught that appears, the owners on such parts of the street may assent to the construction of the road. We think that the action cannot be sustained in this aspect, and that the question as to the rights of the abutters in the street to have it free from any use injuring the adjoining property, does not arise in this case. As long before this road can be completed, that much debated question will be settled by litigation now pending decision in our highest court, it is not necessary we should express an opinion on this subject. The defendants must take the risk of that decision.

To maintain the action in its first aspect, it must be shown that the defendants do not possess the power or franchise to construct the road on the street in question. That power is challenged by the plaintiffs on several distinct grounds.

The defendant company was incorporated May 26, 1874, under the name of the Brooklyn Elevated Silent Safety Railway, and authorized to construct its road on certain specified streets in Brooklyn, including York street. On May 22, 1875, an act was passed adding one new corporator, providing for a somewhat different character of structure and changing the name of the company to its present title. The first contention of plaintiff's counsel, that the constitutional amendments of 1875 operated upon the previ-

ously granted charter to the defendant, has been definitively settled adversely by the decision of the Court of Appeals in the case of *The Gilbert Elevated Railroad Company* (70 N. Y., 361). The same principle has been reaffirmed by the same court in *The People* v. *The Flatbush, etc., Railroad Company* (not reported).

Nor did the amendatory act of 1875 create a new corporation or grant a new franchise. It merely regulated the use of a franchise previously granted. The amendment of a statute does not operate as a repeal and re-enactment of the retained part of the amended act, but such part is to be considered as having continued the law from the time of its original enactment. (*Ely* v. *Holton*, 15 N. Y., 595.)

The constitutional limitation upon the power of the legislature to change the names of persons, has no application to corporations. But were it otherwise the result is not that the identity of the defendant corporation was changed, but that its present title is a misnomer. We, therefore, think that the defendants are not obliged to obtain the consents or determination prescribed by the constitutional amendments.

There now remains to be considered the ground on which the learned justice, at Special Term, granted this injunction, the insolvency of the corporation, and the fact that it is in the hands of the individual defendants as receivers. It is claimed by defendants, I think correctly, that there is no allegation of insolvency in the complaint, nor direct proof of the fact in the papers. The complaint merely states that in an action by a creditor, in which the insolvency of the company was alleged, receivers were appointed. There has been no judicial declaration of the insolvency, nor judgment forfeiting defendant's charter therefor.

But assuming the insolvency of the defendant company, I think that would not authorize the order appealed from as to it. Insolvency continued for a specified period is by statute made a ground upon which forfeiture may be decreed. Of that the State alone can take advantage, and I know of no principle of law, nor of any statute, by which insolvency is, *per se*, a forfeiture of corporate rights. We think the receivers, by their appointment, were vested with all the franchises of the corporation, to construct and operate the railroad.

The company was by law authorized to mortgage its franchises as well as the property, and the receivers took title to the franchise with the property.

It is too late to question in this country the power of receivers to operate railroads or exercise other corporate franchises under the direction of the court; and there would seem to be no reason why receivers should not complete a road partially built as well as operate one completed.

It is true that the right of eminent domain did not pass as a part of the mortgaged franchises. But the statute of 1881 (chap. 649) would seem to confer such power, and it is not necessary that the power be exercised by a corporation. (*Matter of Townsend*, 39 N. Y. 171.) But if the receivers could not exercise such powers, it would by no means follow that the construction of the road has become impossible. It is entirely possible that the property rights affected by the road may be acquired by purchase. On the sale of this road the purchasers are authorized by law to form a new corporation, which would have the right of eminent domain. It seems entirely proper that the receivers, therefore, should carry on the construction of the road where the property rights of opposing owners are not involved, and thus enable the purchasers, if there be a sale, or the defendant corporation, if its property be restored to it, to complete the road within the statutory time and save the franchise.

The plaintiffs are not concerned in the validity of the receiver's certificates. That is a question for those only who propose to advance on such certificates and those who are interested in the property.

The order appealed from should be reversed, with ten dollars costs.

Present — BARNARD, P. J., DYKMAN and CULLEN, JJ.

Order continuing injunction reversed, with costs and disbursements.