THE EDISON GENERAL ELECTRIC COMPANY VS.
THE CITY OF CINCINNATI.                    ·

*Right of foreign electric light companies to use streets — not restricted to use of poles, piers, posts or abutments.*

A foreign electric light company may by the law of comity exercise the rights and privileges conferred on domestic corporations, by sec. 3461, R. S., when such exercise is not inconsistent with the laws of its own state or the provisions of its own charter.

Under that section electric light companies are not restricted or limited to a mode of using public streets which simply provides for the erection of posts, piers and abutments necessary for the wires.

*Decided March 18, 1890.*

The plaintiff alleges that it is a corporation duly organized under the laws of the State of New York; that it is doing business in Ohio and other states of the Union, and that it has an agency and office in the city of Cincinnati; that its business is to supply public and private buildings, manufacturing establishments, streets, alleys, lanes, lands, parks, squares and public places with electric light, heat and power, and to buy, sell and otherwise handle all kinds of electrical appliances, fixtures, etc.; that it desires to place, maintain and .use wires underground in the streets, avenues, alleys, lanes, lands, squares and public places, including side-walks, of said city of Cincinnati, whereby to conduct electricity for furnishing light, heat and power, including the establishment of all necessary plants, fixtures, appliances and other

apparatus, including its conduits, mains, pipes, tubes, junction boxes, connection boxes, man-holes, posts, piers and abutments, for inserting, maintaining and using its wires under the surface of the streets, etc., and furnishing light as aforesaid; subject, however, to the rights of the public to the use of said streets, etc., and with such location and arrangement of its said wires, plants, conduits and other apparatus, as not to interfere with the successful operation of existing telegraph and telephone wires, or with the use by the public of the streets; that it has made due application to the proper authorities of the said city of Cincinnati, for a grant by ordinance to it, its successors and assigns, of the necessary rights, franchises and privileges thereunto, and that in such behalf, it has made application to the Board of Public Affairs, for recommendation by it to the Common Council, of a suitable and necessary ordinance whereby to confer upon it, its successors and assigns, said rights, franchises, privileges, etc., but the said Board of Public Affairs have refused to recommend such ordinance and have rejected the same; whereby it has become impossible for this plaintiff to obtain from the municipal authorities of Cincinnati, the right to lay and maintain its wires conduits, etc., and prosecute its business as aforesaid; that it can not agree with the municipal authorities of said city as to the mode of use by it in said streets, alleys, etc., and in conse-

quence thereof, the said municipal authorities have unreasonably delayed to enter into an agreement with this plaintiff, as to the mode in which it shall lay its wires, etc.

Wherefore it prays this court to direct in what mode it, its successors and assigns, shall place, maintain and use its wires underground in the streets, avenues, alleys, lanes, lands, squares and public places, including sidewalks, of said city of Cincinnati, whereby to conduct electricity for furnishing light, heat and power, including the establishment of all necessary plants, fixtures, appliances and other apparatus, including conduits, mains, tubes, pipes, feeders, junction boxes, connection boxes, man-holes, posts, piers and abutments for inserting, maintaining and using wires under the surface of the streets, and furnishing light as aforesaid.

To this petition the defendant files its motion to dismiss the same, for the following reasons :—

1st.   Because the plaintiff is a foreign corporation, and as such cannot exercise the rights, privileges and franchises as sought for in its petition.

2nd.   Because the Board of Public Affairs has not the power to recommend for adoption, nor the Common Council to pass any ordinance, granting to any electric light company the right to construct conduits or other appliances, under the surface of the streets

or side-walks, in which to lay and maintain wires and other electric apparatus, for the purposes stated in plaintiff's petition.

*Foraker, Black & Rockhold,* for plaintiff.

*Theodore Horstman, city solicitor,* for defendant.

GOEBEL, J.

The application for authority as prayed for, is by virtue of secs. 3454 to 3471 R. S. in reference to magnetic telegraph companies. The particular sections which are to be considered in the discussion of this case are sections 3454 and 3461 R. S.

Section 3454 reads as follows : "A magnetic tele-"graph company heretofore or hereafter created may "construct telegraph lines, from point to point, along "and upon any public road, by the erection of the "necessary fixtures, including posts, piers and abut-"ments necesary for the wires ; but the same shall "not incommode the public in the use of such road."

By section 3471*a*, the sections as to magnetic telegraph companies, become applicable to electric light companies, and that section reads as follows :

"The provisions of this chapter, so far as the same "may be applicable, shall apply also to any company "organized for the purpose of supplying the public "and private buildings, manufacturing establishments, "streets, alleys, lanes, lands, squares, and public places

"with electric light and power, and every such com-
"pany shall have the same powers and be subject to
"the same restrictions as are herein prescribed for
"magnetic telegraph companies."

The first objection raises the question, whether
this a foreign corporation can exercise the rights and
privileges granted to a domestic corporation. It is
not claimed that the plaintiff has not the right, under
its charter and the laws of New York, to carry out
the objects designated by its charter. Nor do we
know of any statute of New York, which prohibits
the plaintiff from exercising its power beyond the
State of New York.

As a general proposition, powers exercised by
corporations, in a state other than that of incorporation,
are valid or not, as the laws of the state in which
they exist prohibit, or either expressly or impli-
edly permit, their exercise. While a corporation
must dwell in the state under whose laws it was cre-
ated, its existence as an artificial person may be
acknowledged and recognized in other states. Its
residence in one state creates no insuperable objection
to its powers of contracting in another. *Runyan vs.
The Lessee of Coster*, 14 Pet., 122.

If the policy of the state or territory does not per-
mit the business of the foreign corporation within its
limits, or allow the corporation to acquire or hold
property, it must be expressed in some affirmative

way; it cannot be inferred from the fact that its legislature has made no provision for the formation of similar corporations, or allows corporations to be formed only by general law. *Cowell vs. Springs Company*, 100 U. S., 55.

Comity forms the basis of recognition of corporations, incorporated under another sovereignty, and is binding on the courts as being part of the common law of the state.

In harmony with the general law of comity obtaining among the states composing the Union, the presumption should be indulged that a corporation of one state, not forbidden by the law of its being, may exercise within any other state, the general powers conferred by its own charter, unless it is prohibited from so doing either by the direct enactments of the latter state, or by its public policy to be deduced from the general course of legislation or from the settled adjudication of its highest court. *Tombigbee R. Co. vs. Kneeland*, 4 How. (U. S.) 16. *Bank of Augusta vs. Earle*, 13 Pet., 519. *Newburg Petroleum Company vs. Weare*, 27 O. S. 343. *West. Union Tel. Co. vs. Mayer, Treas.*, 28 O. S. 521.

We know of no statute, in this state, which prohibits a foreign corporation from exercising its general powers. The general course of legislation has not been hostile to foreign corporations, and the course of decisions of our Supreme Court has been such as

to give sanction to the exercise of those powers, when not inconsistent with our laws, and not in violation of any power conferred by the companies' charters.

It is claimed, however, in this case, that while courts may enforce contracts in favor of any foreign corporation, under the rule of comity existing between states of the Union, they will not extend the rule so as to authorize a holding by such corporation, of a franchise, privilege or right of property in this state ; or by the general statute conferring the right of eminent domain on domestic corporations, confer by implication upon such corporation such power ; that such rights must be expressly authorized by legislative enactment.

We concede that the right of eminent domain cannot be exercised unless expressly authorized by statute. Since the power to condemn property is a stringent and extraordinary one, based upon public necessity, or an urgent public policy, the right and mode must be strictly construed. The legislature is solely to judge what persons, corporations, or other agents, may properly be clothed with the right of eminent domain. We think there can be no question that the legislature has power to confer the right of eminent domain upon a foreign corporation.

*In the matter of Peter Townsend,* 39 N. Y. 171, the court held, that an act of the legislature taking land

in that state for a public use, was not unconstitutional, because the instrumentality employed for that purpose, was a corporation created by the laws of another state ; nor because such corporation derived a pecuniary benefit from the use of the lands so appropriated.

If the use be in its nature public, the legislature are the sole judges of the question whether the benefit to our citizens, or to the state, is such as to warrant the taking of private property therefor, and are also the sole judges of the question what supervision or control over the use should be retained, in order to secure the contemplated public benefits.

So in the case of *Abbott vs. New York and New England R. R. Co.*, 145 Mass., 450, the court held, that although the power to take land by the right of eminent domain, which has been granted by the legislature to a domestic railroad corporation, will not pass to a foreign corporation which, by deed, succeeded to the rights and powers of the domestic corporation, without the assent of the legislature, such assent may be gathered from a series of acts of the legislature.

Again, the power to take land by eminent domain, may be given to a foreign corporation, when the use for which land is taken is a public use ; the use is not the less public because the owners are domiciled or incorporated out of the state. *State vs.*

*Sherman,* 22 O. S. 411. *South Western R. R. Co. vs. The Southern & Atlantic Tel. Co.,* 46 Ga., 43. *Gilmer vs. "Lime Point,"* 18 Cal., 229, 251, 255. *Clark vs. Barnard,* 108 U. S., 436, 452.

Under sec. 3456 R. S. the power of eminent domain is expressly conferred upon magnetic telegraph companies. Whether it is broad enough by its terms to include foreign companies, it is not necessary to determine, since it is not sought in our opinion in this case, to exercise that power. This proceeding is directly under section 3461 R. S., which provides:—

"When any lands authorized to be appropriated to "the use of a company are subject to the easement "of a street, alley, public way, or other public use, "within the limits of any city or village, the mode of "use shall be such as shall be agreed upon between "the municipal authorities of the city or village and "the company; and if they cannot agree, or the "municipal authorities unreasonably delay to enter "into any agreement, the probate court of the county, "in a proceeding instituted for the purpose, shall "direct in what mode such telegraph line shall be con- "structed along such street, alley, or public way, so "as not to incommode the public in the use of the "same; but nothing in this section shall be so con- "strued as to authorize any municipal corporation to "demand or receive any compensation for the use of "a street, alley, or public way, beyond what may be

GOEBEL'S PROBATE REPORTS. 313

The Edison General Electric Company vs. City of Cincinnati.

"necessary to restore the pavement to its former "state of usefulness."

It will be observed that when any lands essential to the use of a company are subject to the easement of a street, alley or public way, or other public use, the mode of use by such company, of any such street, alley or public way, shall be agreed upon between the municipality and the company ; and such use shall be without compensation to the municipality, beyond what may be necessary to restore the pavement. By the agreement the company obtains a franchise, right or privilege, jointly, to use and occupy the street in a mode agreed upon with the municipality.

While this, to an extent, deprives the municipality of the exclusive use of its franchise, such franchise is subject, nevertheless, to legislative control. The legislature may modify the public use, or may restrict the same by granting a right to erect poles and other obstructions in the streets. We think therefore, when the legislature conferred upon a telegraph company, or electric light company, the privileges contemplated by sec. 3461 R. S., it did not call for the exercise of the power of eminent domain.

It is therefore immaterial, in this case, whether the power of eminent domain is expressly conferred upon foreign corporations, or whether by construction, such powers may be implied. We think that under

the law of comity, the plaintiff is entitled to exercise the rights and privileges of a domestic corporation in the use of the streets, when the exercise of such rights by the foreign corporation is not inconsistent with our laws and the grant of its own charter.

We come to the second objection : Has the Board of Public Affairs the power to recommend and the Common Council to pass, an ordinance granting to any electric light company the right to construct conduits, or other appliances, under the surface of the street, or side-walks, in which to lay and maintain wires and other electrical apparatus?

It is claimed that this power does not exist, in as much as the statute provides for the erection of poles, piers and abutments, for sustaining the cords or wires for an over-head system.

Judge Dillon in his work on Municipal Corporations sec. 89, says : "It is a general and undisputed proposition of law, that a municipal corporation possesses and can exercise the following powers and no other, First : those granted in express words ; Second : those necessarily or fairly implied in or incident to the powers expressly granted ; Third : those essential to the declared objects and purposes of the corporation. Any fair, reasonable doubt concerning the existence of power, is resolved by the courts against the corporation and the power is denied.

It is well established that a corporation may exercise all the powers within the fair intent and purpose of their creation, which are reasonable and proper, to give effect to powers expressly granted, and to that end must have a choice of means, and are not confined to any one mode of operation. And this would seem but just ; otherwise it would deny them the power of self-preservation, to effectually carry out the objects of their incorporation in many cases."

While courts have adopted a strict, rather than a liberal construction of powers, and in case of ambiguity or doubt have resolved in favor of the public, yet this rule has not been enforced when there are discretionary powers conferred upon the municipality in general terms, without being accompanied by any prescribed mode of exercising them. *City of Cincinnati vs. Gwynne*, 10 Ohio, 192. *Markle vs. Town Council of Akron*, 14 Ohio, 587.

But we think that sec. 3454 R. S., does not prescribe the mode ; it authorizes a magnetic telegraph company, or, as in this case, an electric light company, to erect the *necessary fixtures*, including posts, piers and abutments, necessary for the wires, upon any public road. This provision contains no limitation as to the kind or character of the fixtures to be employed.

Section 3461 R. S. expressly provides that the mode of use shall be such as may be agreed upon

between the municipal authorities and the company; and, if they cannot agree, or the municipal authorities unreasonably delay to enter into any agreement, the Probate Court shall direct the mode of use. This is a matter of regulation, either by the municipality by agreement, or by the court in the absence of an agreement; and in exercising the power conferred by statute, the municipality does not violate or exceed any of its corporate powers.

But assuming that the statute did prescribe the mode contended for, for stringing wires, that would be simply a regulation. While the statute prescribes the mode by which the objects of companies may be carried out, the municipality does not lose the control of exercising, when the occasion calls for it, its police power, to prescribe rules for and regulate such corporations in such manner as will fully protect health, life and property.

This is the discretion committed to the municipality, of exercising the powers for the public good at any time. Police regulations cannot be made to conflict with the charter of a corporation or impair any of the essential rights which it confers. Assuming now that the statutory mode is part of the charter, yet if the municipality, under the exercise of police powers, should provide for an under-ground instead of an over-head system for electric light companies, then such substitution would not affect or impair substan-

tial rights, if by such new mode the object of such corporation could be fully carried out.

Justice Bradly in the case of *Beer Company vs. Massachusetts*, 97 U. S., 25, said : "Whatever differences of opinion may exist, as to the extent and boundaries of the police power, and however difficult it may be to render a satisfactory definition of it, there seems to be no doubt that it does extend to the protection of lives, health and property of the citizens."

The exercise of discretion in respect to police powers is not a matter of judicial inquiry, except when the power is abused or there is an invasion of private right.

On the whole, we are of the opinion that, under sec. 3461, the municipality has the power to agree with electric light companies to use the streets, alleys and public ways, in such manner as not to incommode the public in the use of such streets, alleys and public ways, and such companies are not restricted or limited to a mode in the use of such streets, for wires which simply provides for the erection of posts, piers and abutments necessary for such wires.

It is also claimed that the authority conferred by sec. 3461, upon municipalities, cannot be conferred upon the Probate Court. We see no reason why that could not be done, if the statute so authorizes it. True, the power cannot be exercised by the court

The Edison General Electric Company vs. City of Cincinnati.

until the municipality and the company are unable to agree. The intention of the legislature was to provide a remedy when, for any reasons, the municipality should fail to enter into an agreement, and thereby defeat the objects fairly contemplated by the act and the company's charter.

The motion to dismiss the petition will be overruled.